C. Renée Manes
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR  97204
Tel: (503) 326-2123
Fax: (503) 326-5524
Email: renee_manes@fd.org

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,**  Plaintiff,  v.  **SOLOMON DEAN COOK,**  Defendant. | Case No. 3:22-mj-00087  **DEFENDANT'S MEMORANDUM ON ISSUES RELEVANT TO JUVENILE AND YOUNG ADULT ACTORS AND IN SUPPORT OF PRETRIAL RELEASE** |

## INTRODUCTION

The government has presented this Court with a memorandum alleging conduct by Mr. Cook dating primarily from the time he was 17.[1]  Counsel for Mr. Cook noted

---

[1] None of the specific acts cited by the government in its memorandum in support of detention, filed under seal, dates before Mr. Cook's majority. While the government also alleges that criminal conduct occurred after Mr. Cook's 18th birthday, the issues regarding relative culpability and amenability to reform continue into young adulthood, as discussed in this memorandum.

at the hearing that this conduct occurred while Mr. Cook was a juvenile and would, if charged at the time, be covered under the Juvenile Delinquency Act (JDA), codified at 18 U.S.C.A. §§ 5031, 5032. "The JDA's purpose is to "remove juveniles from the ordinary criminal process in order to avoid the stigma of a prior criminal conviction and to encourage treatment and rehabilitation.' " *United States v. Mendez*, 28 F.4th 1320, 1324 (9th Cir. 2022) (*quoting United States v. Doe,* 94 F.3d 532, 536 (9th Cir. 1996).)

Counsel for Mr. Cook does not write to contend that Mr. Cook should be treated under the JDA, but to provide some relevant information on how this Court should view the acts of a juvenile/young adult such as Mr. Cook on issues relative to moral culpability and his capacity to change his behavior, which is relevant to the pending question of release.

## ARGUMENT

In *Roper v. Simmons*, 543 U.S. 551 (2005), the Supreme Court recognized three differences between juveniles and adults that were critical to consider when evaluating the legal implications of juvenile conduct. First, juveniles lack maturity and have "an underdeveloped sense of responsibility" that results in " 'impetuous and ill-considered actions and decisions.' " 543 U.S. at 569 (further citations omitted). Second, juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure. *Id.* Third, "the character of a juvenile is not as well formed

as that of an adult. The personality traits of juveniles are more transitory, less fixed."

*Id.* (further citations omitted). As a result, the Court held that:

> The reality that juveniles still struggle to define their identity means it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character. From a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed. Indeed, "[t]he relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside." *Johnson, supra*, at 368, 113 S. Ct. 2658;[2] see also Steinberg & Scott 1014[3] ("For most teens, [risky or antisocial] behaviors are fleeting; they cease with maturity as individual identity becomes settled. Only a relatively small proportion of adolescents who experiment in risky or illegal activities develop entrenched patterns of problem behavior that persist into adulthood").

*Roper*, 543 U.S. at 570.

*Roper* is just one of many decisions in the last few decades that have analyzed the relative legal and moral culpability of juveniles and young adults, based on the neuroscience of the developing brain. We now understand that the process of maturation involves three components of brain function: 'gray matter'– the outer layer of the brain, 'white matter connections' - the brain cells serving as the 'wiring' between neurons, and activity in the chemicals or 'neurotransmitters' that execute messages within the brain. All three of these components are limited, or compromised, in

---

[2] *Johnson v. Texas*, 509 U.S. 350 (1993).

[3] Steinberg & Scott, *Less Guilty by Reason of Adolescence: Developmental Immaturity, Diminished Responsibility, and the Juvenile Death Penalty*, 58 AM. PSYCHOLOGIST 1009, 1014 (2003); provided as Exhibit A.

juveniles – even in individuals up to their early twenties. *See, e.g.,* Laurence Steinberg, et. al., *Around the World, Adolescence is a Time of Heightened Sensation Seeking and Immature Self-Regulation,* 21 DEVELOPMENTAL SCIENCE 1 (2018) ("Self-regulatory capacities may reach adult-like levels at around age 15 in relatively less arousing, 'cool' contexts, but when tasks become more demanding or emotionally arousing, adult-like performance may not be reached until closer to the mid-20s."))(provided as Exhibit B); *see also* Surgeon General Vivek Murthy, *E-Cigarette Use Among Youth and Young Adults: A Report of the Surgeon General's Executive Summary,* Atlanta, GA: U.S. Department of Health and Human Services, Centers for Disease Control and Prevention, 2016, Fact Sheet 508 ("The brain is the last organ in the human body to develop fully. Brain development continues until the early to mid-20s.") (provided as Exhibit C); Bradley Taber-Thomas and Koraly Perez-Edgar, *Emerging Adulthood Brain Development,* in Jeffrey Jensen Arnett (Ed.), THE OXFORD HANDBOOK OF EMERGING ADULTHOOD, Oxford University Press (1st ed. pp. 126-131), Oxford England, 2016 (observing "neurodevelopment in EA [early adulthood] involves prominent changes in association corticies and the frontolimbic systems involved in executive attention, regard and social processes. In addition, alterations in neurodevelopment trajectories in EA may underlie differences in functioning and new vulnerabilities to psychopathology evident in this developmental window.")

One of the most prominent researchers on brain development, Dr. Jay Giedd, explained the physiology this way:

> The most recent studies indicate that the riskiest behaviors (among adolescents) arise from a mismatch between the maturation of networks in the limbic system, which drives emotions and becomes turbo-boosted in puberty, and the maturation of networks in the prefrontal cortex, which occurs later and promotes sound judgment and the control of impulses. Indeed, we now know that the prefrontal cortex continues to change prominently until well into a person's 20s.

Jay Giedd, *The Amazing Teen Brain,* 312 SCIENTIFIC AMERICAN 33, 34 (2015)(Exhibit D, hereinafter "*The Amazing Teen Brain*").

The full development of crucial executive functioning – the moral aspect of a person's brain that renders them fully culpable – does not occur until a person's 20s. Indeed, the full development of gray matter "peaks latest in the prefrontal cortex, crucial to executive functioning, a term that encompasses a broad array of abilities, including organization, decision making and planning, along with the regulation of emotion." *The Amazing Teen Brain,* at 35. "The prefrontal cortex functions are not absent in teenagers; they are just not as good as they are going to get. Because they do not fully mature until a person's 20s, teens may have trouble controlling impulses or judging risks and rewards." *Id.* at 36.

While the tendency to risky behavior by juveniles and young adults is concerning, the experts also confirm that the plasticity of the juvenile and young adult brain means that interventions designed to assist a young person address these issues can, quite literally, change the course of that individual's life:

> Appreciating that the brain is changeable throughout the teen years obliterates the notion that a youth is a "lost cause." It offers optimism that interventions can change a teenager's life course.

\* \* \*

>   Greater society has some compelling opportunities as well. For one thing, it could be more focused on harnessing the passion, creativity and skills of the unique adolescent development period. Society should also realize that the teen years are a turning point for a life of peaceful citizenship, aggression or, in rare cases, radicalization. Across all cultures, adolescents are the most vulnerable to being recruited as soldiers and terrorists, as well as the most likely to be influenced to become teachers and engineers.

*The Amazing Teen Brain,* at 37.

## CONCLUSION

While Mr. Cook is charged with conduct that is extremely concerning in its nature, the conduct on which the government has focused occurred when he was a juvenile, and he remains a very young adult. There is every reason to believe that Mr. Cook can, with the assistance of the services of the United States Pretrial Services Office and the guidance of his counsel and her offices, learn from whatever mistakes he has made in the past and quite literally turn his life around. Having him do so is in the best interests of Mr. Cook and society as a whole. Granting him pretrial release allows for that process to begin.

Of course, should Mr. Cook fail to take advantage of the benefits of that release, his Pretrial Services Officer will promptly notify this Court so that appropriate remedial action may be taken.

Respectfully submitted this 12th day of May, 2022.

*/s/ C. Renée Manes*
C. Renée Manes
Assistant Federal Public Defender